Morning, ladies and gentlemen. I guess our first case for argument is the Valley Forge. Good morning, Your Honor. May it please the Court, Counsel. My name is Matt Walsh, and I represent the proposed intervening insurers in an action that was brought by appellees against one of our insurers, King Supply. We're here seeking a reversal of the order denying our intervention. The primary purpose of our intervention was to stay the underlying action pending resolution of some coverage issues. When we learned that they entered into a settlement, the appellees and our insured, of around $20 million, and that 99% of that settlement was to come from insurance proceeds. What is the status of the state suit? About a month ago, we were successful in the coverage action. I believe they filed a notice of appeal last week. You were successful in what? The coverage action. The court in Lake County found that there was no coverage for the claims. So what do we have to decide? Well, they're still on appeal, and if for some reason the State Appellate Court comes back and says that there is coverage, then we still have this issue hanging over us. Any reason we should hurry? No, I mean, I don't think so. I think the status quo will be the same now as it will later, because if we do win, then none of this is necessary. If we don't win, however, I mean, the whole purpose of our argument here and our reason to go back to the court is to say, wait a second. I don't understand. If you lose in the state system, why isn't that raised true to COTA? Well, that's a coverage issue. It's not raised true to COTA on the reasonableness of the settlement. But you wanted to intervene and litigate coverage, too, right? Well, we pled in the alternative. Our main purpose to intervene was just to stay the case, to postpone any final fairness hearing on the settlement. We included as an alternative argument in our intervention brief the coverage issues. So you don't want the federal courts to decide coverage? No, that's out the window now. I think the Lake County Court has pretty much taken care of that. Although you wanted that option while it was still pending in the state courts? Yes, at that point. Why should we tolerate procedural mechanisms designed to multiply the litigation that way? Well, I guess at that point we weren't really trying to multiply litigation. We were trying to just get all the issues. But why were you in two? And in fact, you started in Texas, didn't you? We started in Texas. Why are you in all these different courts? Well, we started in Texas. That case has been dismissed. Why? Was that case dismissed? No, why are you in three different courts? Well, we started in state court in Texas right after we learned of the settlement to get an adjudication of our coverage. So why did you stay in Texas? Well, we couldn't stay in Texas. That case was dismissed. For lack of jurisdiction? Yes. Yes, and because the insurance companies had no jurisdiction there. Is that right? We didn't have jurisdiction over the claimants. But the plaintiff, or the defendant, I guess, did have. Well. Who was the Texas party? It was the appellees, and we didn't have jurisdiction over the appellees in that case. And so they filed a corresponding case in Lake County against us because they had an assignment of the insurance proceeds. And that's the case that proceeded. And that was filed before our intervention as well. And to answer your question about why so many different cases, I guess we were just trying to get an understanding of where the coverage issues were, and we didn't want a settlement out there before the coverage issues were decided, because the entire settlement hinges on the coverage issues. Well, how many have already been decided? One. And the main coverage issue in this case has been decided. We have exclusions. In Illinois? In Illinois. In Illinois. And now they filed a notice of appeal, so that's now a material. Well, it would seem these would be everywhere. I mean, how many insurance companies have that provision in it now? Does anybody not have it? I can't speak for other insurance companies. I can say that. Well, you've got three of them. Yeah, they all have it, yes. They all have that exclusion. And this is the first one that's actually been adjudicated? You know, I don't know the answer to that question. I know it's the first one that's been adjudicated. As far as you know. Yeah, as far as I know. Mr. Walsh, one of the things that I'm kind of curious about here is that let's suppose we do have to decide this case on the merits. You want to be able to challenge the reasonableness of the settlement in the federal court in the underlying litigation. Presumably you don't want to do that for the sake of the class, do you? No. There are a couple of places in your brief where you seem to claim to be protecting the interests of the class, which seems rather preposterous. We want to do it for the sake of us. For the sake of you. Okay, that's helpful. But what I don't understand is why you need to do that or why you think you need to do that, particularly since Illinois law in the Gillen case and the Stonecrafters case seems remarkably accommodating to insurers who have breached their duty of coverage and defense to their insurers in letting insurers in those instances challenge the reasonableness of the coverage action, right? Right. So what do you need to be in federal court for? Well, I think the reason for that is once you have a district court putting a stamp of approval on the fairness of a settlement. You're not bound by that. I know we're not bound by that, but just in our mind, it might provide the state court with a reason. So because of that concern about some kind of penumbra, penumbral effect of approval that you weren't a party to and that was obviously being done at your expense, it seems like you want to completely upset the way underlying litigation and coverage issues are litigated. Disputes over coverage happen all the time, right? True. And if you're right, we should be seeing interventions by insurers all the time. There should be thousands of cases and you're supporting such intervention, right? Well, I don't think every case. And I see remarkably few. In fact, the weight of authority seems against you. Well, I don't think there's a ton of cases out there that are like this where you're having such a distinct coverage issue and something that actually has been decided on our side with an exclusion like ours, and then you have a settlement which says, hey, wait a second, 99% of the settlement is going to be your money, even though we have no idea. Only if you have breached. Only if we have breached, otherwise there's no money at all. Right. Yeah. But there are several cases. The First Circuit and the Second Circuit have decided remarkably similar cases involving the right of insurers or the lack of a right of insurers to intervene when they've denied coverage and want to basically stick their nose into the underlying liability dispute and the settlement of that. There's the Travelers' Indemnity case versus Dingwell from the First Circuit, and I think it's called Restore a Dent from the Second Circuit. I don't think anybody cited those, but those circuit decisions say, in essence, forget about timeliness, this just isn't the sort of interest where we allow people to intervene in the underlying litigation. Yeah. I mean, to be honest, John, I don't know those cases, and I think in this case, I think it is unique, different than a regular insurance coverage case where you have just simply whether there's coverage or not as opposed to something where two parties we're not involved in say, hey, listen, we don't care about your coverage, but you're on the hook for 99% of that, and you don't get a say in that, and to me it's just not fair to us. But you do get a say in the state courts in the coverage action where you get to challenge reasonableness. As I say, Illinois seems to be far more accommodating than Indiana, for example, after the breach. I agree with Your Honor, and again, it might be a minor point, but it's a point I need to make is that we think that you have a district court putting a stamp of approval on a settlement, the reasonable settlement. You have a state court saying we don't need to look at this. It's approved. Doesn't the coverage issue embrace the settlement issue that is in the state court? Why wouldn't you say that one reason that there's no coverage is that the money they want is the product of their improper settlement? Yeah, I think that's the second question, though. I think the first question is... Why isn't that a coverage question? Well, I think the way the coverage... I mean you don't cover, presumably, an unjust settlement. I think you've got to take that in two parts, though, Your Honor. I think you have to take the first part as whether there's any coverage at all, and that's the part that we want in some appeal. But the first, second doesn't matter. The point is your second argument is that there's no coverage for a settlement which is unjust. Yes. Isn't that your argument? That is. Why isn't that a coverage argument? I guess it is a coverage argument. Why doesn't it belong in the state court? Again, I think the reason is that because now that's a reasonable argument to me in the state court, and maybe it does belong in the state court, but I think what we have here now is a district court saying, hey, wait a second, this is reasonable, this is fair, and then they send that back to the state court. I know the state court, and you're right, the state court gets to assess its own reasonableness of the settlement, but I think the state court now gets to say, wait a second, we have this district court... It sounds like you're afraid the state courts are just going to take their eye off the ball. Maybe. That's a possibility. And so we ought to step in and prevent them from making that mistake somehow. That's not the way federal and state courts interact with each other. We expect them to do their job well. I understand that, and I guess taking the eye off the ball isn't necessarily the right term for me. I think it's just a question of, again, and I'm sorry to repeat myself again, but I think it's just a question of maybe the stamp of approval that the federal court gives a settlement hurts us in the state court if it ever gets there, and it may not ever get there. I mean, if we win the appeal, obviously... If you were to intervene, what would you challenge? Would you challenge the reasonableness, go beyond the coverage and say that $20 million is totally unreasonable for people who just got an unwanted fax? Right now we wouldn't challenge anything. We would just want to stay of the case, putting it back to where it was before the final fairness hearing. However, if the appellate court in the state goes back and says, wait a second, you guys do have coverage, yes, then we would probably address the reasonableness of that settlement. So are you saying an insurer can intervene in any settlement? I'm not saying that. I think that does go too far. I think if you have a personal injury case, one plaintiff and you have an auto accident or something like that, and there's a settlement for $10 million, and I don't necessarily think that's right. But when you have an instance like this... What's the difference? Well, because here you have a settlement solely based on a coverage issue. I mean, the other thing is, from the district court's perspective, what you have is a settlement here, in essence, for the entire net worth that you are insured. Well, you've seen the findings. After extensive negotiations, plaintiffs and the district court were satisfied that $200,000 was all the defendant could put up without going into bankruptcy, right? Right. Okay. So if you get all that the defendant has, that sounds like a reasonable settlement. And why not allow for the contingency of coverage? It may have been futile. It was an awfully clear-cut exclusion, it seemed to me. But why not allow for that possibility? Again, I think it's just a question of how it was entered into. I mean, there was nothing taken into account of the coverage issues when they entered into that settlement. So what? What are they supposed to do? Well, I think what they should do is there should be an understanding of what the potential is of actually recovering the settlement. They know what the potential is. It's a very slim chance of what? What are the policy limits? There are several policies. There are several underlying policies that are one or two lenient, and then a couple of that that are five to nine. The total is to $20 million. Yeah, essentially. And that is based on the three insurance companies' coverage. Yeah, the underlying and then the umbrellas above that. Yeah, that's the total amount that's covered. Obviously, they would have settled for $50 million if there was more coverage. I'm sure they would. What does the insurance policy provide about settlements? In what sense? Does the insurance policy say that to the insured that you can't settle a case without our permission because, you know, it's our money? Yeah, they do. But, I mean, I'm going to agree with the policy. I think that's out the window now because we deny coverage. I don't think they have to get our consent to settle the case at this point, but it still has to be reasonable. Well, if they go after you, it maybe has to be reasonable, although if we assume a breach and an insured who has simply been abandoned for the defense and indemnification that they paid for, I would think you give awfully broad deference to the settlement judgment of such a desperate victim of an insurance company. Now, I know you say that's not what happened, but your whole case is premised on the assumption that that is what happened, right? I'm sorry, I didn't quite get that. The reason that you want to litigate all this is because of the concern that you may be held to have breached your coverage and abandoned your insured, right? Right. So that's the premise, and in that case, I think you've got to allow the abandoned victim of the insurance company an awful lot of latitude, but that's a question of state law. But let me just go back for a second, if I could. You were saying you don't think this kind of intervention should be ordinary, I thought. I think it's different, yes. And I'd like you to articulate the rule that you think should be applied and that would give you a right so that it would be an abusive discretion to deny your right to intervene in such a case. Okay. Setting aside the timeless issue for a moment. Yes, on the interest. Yeah, the interest. Going back to my example of the auto accident, where there's not a coverage issue, I agree. There's not really an interest from the insurer in that standpoint. There's no coverage issues. There's a settlement. They don't get to write the intervene. Even after denying coverage. After denying coverage. Yes, okay. In this case, where you have strong coverage issues, and then you have two parties that are settling a case purely for your proceeds, 99% is purely for proceeds. I understand the description of this case. Describe the rule that you think should apply in these circumstances. I think the rule should be that if parties, not the insurance company, but two parties that are trying to settle a case, and they're trying to use the insurance proceeds only for that case, without knowing whether or not there's any coverage, and implicating your coverage. I think there should be a rule that we should be able to intervene just to protect our rights to contest the reasonableness of that settlement. Thank you. Thank you. Okay. Well, thank you, Mr. Walsh. Mr. Oppenheim? Good morning, Your Honors. I think, as you observed at the outset, there's not a whole lot left in this appeal. This appeal is only an appeal of the denial of intervention. It's not an appeal of the merits of the settlement or anything like that. The state court coverage case in Illinois did proceed. It proceeded to conclusion, as Judge Hamilton pointed out, that CNA, the three insurers, had every right in that case to raise a challenge to the reasonableness of the settlement under Guillen, under Stonecrafters, and their progeny. Interestingly, they didn't do it. They stood entirely on their exclusion, and they were successful. Obviously, it's on appeal right now. So, essentially, what this court is being asked to do is being asked to say that the district judge abused their discretion when they didn't let the insurers intervene in this underlying case where their interests are solely, counsel admitted, solely to protect their own dollars. Their interests are in coverage issues, which are the subject of other litigation. And they didn't do it until five years after the case was filed and after a settlement was reached and after a settlement was preliminarily approved and a week before final approval. Why did you make an agreement keeping your negotiations secret from the insurance companies? Well, the negotiations were part and parcel of Judge Schenker's settlement conferences, and so they're protected by that confidentiality. Why did you prohibit notice? Oh, I see. Prohibit King Supply from notifying the insurers of the settlement. I think the concern there, and I'm reaching back into memory, was with where the coverage case was going to proceed, and we felt like to the extent that the class was going to have any shot, that it would be in a court in Illinois where there had been some decisional law discussing insurers having a duty to defend despite this exclusion because of common law claims. And I think that the goal was to not have that question taken away and litigated somewhere else like Texas. As it turned out, there was the Texas case anyway, but I believe that was the purpose there. Why would it be taken away? Just the chance of litigating the coverage case in Illinois as opposed to Texas, that's all. If there was a Texas coverage case first and we were unsuccessful in the personal jurisdiction defenses, then we would have had to... I don't think you're supposed to be keeping secrets from your insurance company. Well, I mean, I don't think the insurance company is supposed to be refusing to defend a questionable claim either. I think once they do defend, there is no obligation. There are a lot of sanctions on insurance companies that mount untenable defenses. I've never seen this, keeping secrets from the insurance company. This is pretty remarkable and frankly doesn't help the overall aroma of the settlement. Indulge me with curiosity about one aspect. Given the nature of the claims here for unwanted faxes, the class notice was sent by fax? I believe that's true. It's cost-effective. I'm sure it's cost-effective. My question is whether it's legal or whether the entire settlement winds up violating the statute that's supposed to be enforced. It doesn't because the notice authorized by the court can't be construed as an advertisement for one thing. Is that a solicitation? Yeah, it's not a solicitation to anything. Despite its potential benefit for you all? Right, and to the class members. Who has the $200,000 now? It is sitting in an escrow account. It will be released pursuant to the terms of the settlement once the coverage case and this case wrap up finally. If you wanted to settle with the insurers in the coverage case, would you need approval of the federal court? I think we would need, because it would be a compromise of class claims, I think we would need an approval of a court certainly, and I think we would probably come back to the federal court. We might, I think, do it within the state court. I would have to look to see whether the federal court kept exclusive jurisdiction when it granted final judgment or not. I've got sort of random questions here that don't have a particular logical flow to them, but the class settlement used a broader definition than the original complaint and certification of the class. Why was that? That was at the defendant's request. They wanted, as Your Honor pointed out, since they were putting up all of the assets they could put up personally or corporately outside of the insurance, they wanted to make sure that they were sweeping in every claim that could be made against them. Why didn't that pose a conflict for you, because it winds up diluting the assets available to satisfy the class that you were representing? Well, I think that we were representing the settlement class at the point at which the agreement was made. Well, you pled a narrow class, right, over about a, what, five- or six-week period, right? I think that's right. And were fiduciaries for them, right? Yes. So why is it consistent with that duty to agree to broaden the class so as to dilute the amount of assets available to pay them when you extend it to a full year's worth of recipients of these faxes? Well, I guess I'll answer it in two ways. My recollection is I don't think we practically broadened it at all. I think that they just wanted a definition that was broader, but all the faxes that we knew about that was the source of the five- or six-week definition in the first place are still the same ones. Okay, so there's no new extension. Yeah, exactly. And I think that just answering Your Honor's question in a more theoretical manner, I don't know that it's, I don't think it's a problem for, because class definitions do change throughout the course of litigation as fax become known, and I don't think it's necessarily a problem to try and broaden the class or to narrow a class in that you don't put yourself in conflict. When you do that, I think that's a fairly regular thing. Why didn't the magistrate judge let the insurance companies intervene? Why didn't he? Yeah. They have an interest, and what is gained by keeping them out? Well, finality for one thing, I think it's similar to... Finality, there may be some delay. It has nothing to do with finality. Well, they chose to intervene a week before final judgment was set to be entered. We had given class notice. There were no objectors. The court was set with pen poised to enter final judgment, and then they show up and want to start raising all these new issues, I think. Well, how much time would their intervention have extended the litigation? I guess that depends on what they wanted to do. No, it depends on what the magistrate judge would say, right? He could say, look, this is very late, your intervention, and I'm going to give you a month period, right? Was there any discussion of that? I don't think so. But what they wanted was to stay the whole case indefinitely to wait for the coverage case. Well, of course he doesn't have to stay the whole case indefinitely. He can say to them, I'm not going to stay the whole case, but if you want to intervene, all right, I'll listen to you for a month. He could have done that, I suppose. I think it was within his discretion as this court laid down the factors in the Sokogon case to not do it, but he could have done that. I think the last time you were here, maybe it wasn't you, but somebody said you had over 100 of these cases. I think that might have been me. Might have been you. Well, how many do you have, Henry? Fewer than we had at that point, but still quite a few. My curiosity is, I understand the insurance company said, well, they haven't had a whole bunch of these, but you must encounter this provision in insurance policies quite often. Yes, we do. Has there been in some other case not connected with this one where there has been some determination of coverage? Right. There has, and, in fact, the Illinois Appellate Court last year issued a decision saying that the provision was sufficient to exclude coverage for all of the underlying claims. The fight had been, both with our firm and with other firms that do this, whether the provision, which is entitled violations of statute that govern fax, email, and so on, was broad enough to also exclude common law claims based on the same conduct or potentially based on similar conduct, I guess I should say, and the argument not to get too far into the weeds was whether these complaints raise the possibility that you get some faxes that don't violate the statute, either because they were sent to people with established business relationships or because they're not advertising as the Congress and the FCC defined it, and yet they could still be actionable under the common law as a conversion, say, or a trespass. And so the argument was, well, the exclusion is tied to a violation of the statute. You've got the potential for stuff that doesn't violate the statute, so you've still got to defend until the case is. Of course, that's a commonality problem. Right, absolutely. But the issue is whether the insurer had to defend the case or not. And that's where it arose. There's something phony about this. That is, if you are willing, as the class action entrepreneur, to settle for the policy limits, the defendant will be happy to settle for the policy limits. And where's the fight? Where's the... The defendant might think your class action is invalid, but if he doesn't have to pay anything or just the $200,000 or what have you, then he has no incentive to oppose. It looks like one of these phony class action collusive deals that we criticize from time to time. Well, Your Honor, let me answer... With that secrecy business thrown into it, it gives the whole class action a very unsavory aura. Let me answer that, if I may, both in regard to this settlement in regard to generally settling for policy limits. With regard to this settlement, as Judge Hamilton pointed out, it wasn't just for the policy limits. It was for every cent we could find under every couch cushion at King headquarters, and that part was fought over tooth and nail. And remember, this is a case where the liability they were facing was over $300 million. This was the expanded time, right? But you know you're not going to get $300 million. And so from your standpoint, if you can get the $20 million or whatever it is, that's great. You get a huge fee and so on. You don't have to litigate. And it doesn't cost them anything. So it doesn't sound like adversary procedure. It sounds like collusion. Well, Your Honor, I mean, I think that as a general matter, that's true any time an insurer elects not to defend and not to exercise their right to control the defense, that the insurance is always going to be a contingent asset, and you're always going to have a plaintiff who looks at it as a potential asset, either for collection after a judgment or in settlement, and you're going to have a defendant insured with their own thought process. Sometimes they're going to be more willing than others to enter into such a deal, but I don't think that there's anything collusive about that. I think that there's a simple solution that if the insurers have a concern, they should be in defending the case and controlling it and controlling the settlement. And if the settlement ends up at a number that's unsupported by the liability, they have a remedy under Guillen and under Stonecrafters. I see my time has expired. Thank you very much, Mr. Oppenheim. Mr. Walsh, your time ran out, but you can have another minute or so. Do you have anything to say? Thank you, Your Honor. I just have two small points, and one is just from a practical perspective. I would just think that in a settlement like this, you'd want to know whether or not there's coverage so you can get a legitimate settlement out there. And then the other point is I don't think what we did was crazy here. I don't think trying to intervene as an insurer into a class like this is crazy, and I know it's not of precedential value, but I just point to the Stonecrafters. Why didn't you take over the defense? Well, we didn't take over the defense because we thought we had a heck of an exclusion there. I'm sorry, you had a what? We had a great exclusion, we thought, that was— A great exclusion? A great exclusion to their claim. We didn't want to spend money defending a claim that we didn't think had any merit whatsoever under our policy, and as we found out— Wait, now you're talking about coverage or you're talking about settlement? Coverage. Talking about the coverage aspect. Well, obviously you can put all your eggs in the coverage basket, but now you've decided that's not enough. You want to challenge the settlement. Now, of course, if you'd controlled the defense, you wouldn't have had to settle, right? That's true, but if we'd controlled the defense, we also would have spent— Pardon? We also would have spent a lot of money defending this case that we believe is meritless under our policy. Well, then I don't understand what's going on. You make a judgment that you don't want to spend money defending the case. Then when the settlement turns out to be adverse to you, you decide you want to jump in and now you want to spend your legal fees attacking the settlement. Well, the timing is odd. Don't you have to make a decision at the outset whether you're going to take over the defense? We do, Your Honor, and that's not what we're trying to do here. Well, what you want is two bites at the apple, right? You want to be able to litigate the reasonableness of the settlement in both federal court and in state court, correct? I wouldn't say that's necessarily true. What we wanted to do was get— That's what you asked both courts to do, correct? Well, right now we only ask the underlying court to— I'm sorry, the state court to address whether or not there's coverage. Well, you could have asked them under Gillen and under Stonecraft. Yes, and again, the reason we came or tried to intervene into this case wasn't to control the defense. It was just that we saw a settlement that we didn't think was necessarily fair, and I agree may be collusive, and we just wanted to come in and have our say. It's not collusive if you've abandoned your insured and he's reaching for a life rope, right? I mean, that's the problem in these cases. Okay, thank you. Okay, well, thank you to both counsel.